UNITED STATES of America ex rel.
Vincent CERULLO, Appellant,

v.

Harold W. FOLLETTE, Warden of Green
Haven Prison, Appellee.

No. 424, Docket 32016.

United States Court of Appeals
Second Circuit.

Argued April 11, 1968.

Decided May 8, 1968.

J. Kenneth O'Connor, New York City, for appellant.

Jules E. Orenstein, Asst. Dist. Atty. of Nassau County (Louis J. Lefkowitz, Atty. Gen. of State of New York, William Cahn, Dist. Atty. of Nassau County, on the brief), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge:

Vincent Cerullo appeals from the denial of a writ of habeas corpus following a limited supplemental hearing in the district court. We find that there should be a more complete development of the material facts. Accordingly, we vacate the order of the district court and remand for a full hearing of the relator's claims.

Cerullo is presently incarcerated in Green Haven Prison, serving a 15 to 30 year sentence for first degree robbery, first degree grand larceny, second degree assault and second degree burglary. He was tried with co-defendant Carmine Moccio before Justice Thomas P. Farley and a jury in New York Supreme Court for Nassau County and adjudged guilty on August 12, 1963. During the trial the

district attorney introduced into evidence, over objection of counsel, written statements signed by Cerullo and dated October 4, 1962. Mr. O'Connor, who represented appellant at the state trial and in all subsequent proceedings, requested a voir dire examination with respect to the admissibility of Cerullo's statements, contending that they were involuntary in that the police had extracted the statements from Cerullo through the use of physical coercion. Over counsel's objection Justice Farley ruled that the voir dire would be conducted in the presence of the jury.[1] After the voir dire, the trial judge admitted the statements into evidence. The jury was charged that the statements could not be considered if they found that the statements were involuntary and that, since the testimony of the victim as to the identity of the defendants was insufficient as a matter of law to convict, if they concluded that the statements alleged to have been made by a defendant were involuntarily given, the defendant must be acquitted.

Cerullo appealed his conviction to the Appellate Division. That court directed that the pending appeal be held in abeyance while a hearing on the voluntariness of the defendants' confessions was held in the trial court in accordance with People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) under the mandate of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). People v. Moccio, 23 A.D. 2d 564, 256 N.Y.S.2d 462 (2d Dept. 1965).

On March 1, 1965, Justice Farley conducted the Huntley hearing. Both sides rested upon the record of the trial and the transcript of the minutes of a preliminary felony examination of co-defendant Moccio. Justice Farley found that the confessions were voluntary. Thereafter the Appellate Division unanimously affirmed the judgments of conviction of both .defendants. People v. Moccio, 24 A.D.2d 841, 263 N.Y.S.2d 1009 (2d Dept. 1965).

The New York Court of Appeals granted both defendants leave to appeal. The appeal was reargued after the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the judgment was affirmed by a 4 to 3 vote. People v. Cerullo, 18 N.Y.2d 839, 275 N.Y.S.2d 845, 222 N.E.2d 605 (1966).

Having exhausted state remedies, Cerullo applied for a federal writ of habeas corpus. Judge Tenney dismissed the application February 6, 1967, without a hearing. He found that Justice Farley's determination was fairly supported by the record and noted that the relator did not allege that he had not received a full, fair and adequate hearing in the state court. He denied Cerullo's application for a certificate of probable cause.

Thereafter Cerullo moved before this Court for a certificate of probable cause. In his moving papers, Cerullo showed that the petition for the writ did allege that he did not receive a full, fair and adequate hearing. We ordered that the District Attorney of Nassau County show cause within one week why the action should not be remanded for an evidentiary hearing. After considering the district attorney's answering papers, on April 13, 1967, we granted the certificate of probable cause, vacated Judge Tenney's order denying the writ and remanded to the district court "for a supplementary hearing." Our order stated, "In view of the points made by the relator as to possible inadequacy of the state hearing (see brief, pp. 18–19), we think it best that the state record be supplemented."

The hearing on remand came before Judge Tyler on October 18, 1967. The minutes of the hearing reflect that both

---

1. While Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) makes it prudent to hold the preliminary hearing outside the presence of the jury, if the judge finds the confession voluntary and there is no claim that any unfair con-

sequences flowed from having the jury present, the presence of the jury at the hearing is not in itself ground for reversal. Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967).

parties and the district court were unclear as to the scope of the mandate embodied in the remand order. The district court examined the pages of appellant's brief referred to in our remand order. These pages contain point two of the brief, captioned "The defendant did not receive a full, fair, and adequate hearing." In support of this point, counsel argued in the brief that two time periods prior to Cerullo's confession were unaccounted for by police testimony and that the district attorney had not called some of the police officers who had custody of Cerullo to testify either at the trial or the hearing on remand. A second argument was that the hearing was unfair because it was conducted before the trial judge.

Judge Tyler concluded that the language of the remand order was intended to limit the hearing before him to evidence concerning the hours mentioned in appellant's brief: 5:00 to 7:00 and 7:45 to 8:30 on the morning of October 4, 1962. After the hearing, the court found that there was no credible evidence that Cerullo was subject to any physical violence during these particular hours. No further findings were made. The district judge ordered the minutes transcribed for use on appeal and ordered the writ marked satisfied.

After examining the minutes of the hearing before Judge Tyler and the transcript of the state trial, which also is the record of the state court Huntley hearing, we feel constrained to remand for a further hearing in the district court since the material facts have not been adequately developed in the record before us. 28 U.S.C. § 2254(d). Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

A brief summary of the record will suffice to indicate its inadequacy. Cerullo testified that he was held incommunicado, deprived of food and drink, not given any *Miranda* or other warnings of his rights and beaten by the Nassau County police while being held for questioning between 2 A.M. and 1:30 P.M. on October 4, 1962, when he broke down and signed a statement. All of the police officers involved testified either at the trial or at the hearing before Judge Tyler that Cerullo did not ask to contact anyone while he was being questioned, that he was offered food and drink and had some coffee although he refused some sandwiches and that no physical coercion was used.

■ The evidence in the record which is crucial in resolving this conflicting testimony concerns Cerullo's physical condition on October 5th, the morning after the alleged beatings. Dr. Alexander A. Vivona, who had been the prison physician in Nassau County Jail for 15 years, testified that he had no independent recollection of examining Cerullo. However, his records showed that he gave Cerullo a routine examination following admission to the jail. His diagnosis was: contusions right chest, lower part anterior, contusion of the upper abdomen and right side of the head. When asked what he meant by the term "contusion," Dr. Vivona said, "Well, generally a bruise there is visible signs, scratch and so forth. A contusion, I mean a subcutaneous injury, an injury under the skin, where the skin is not broken whatsoever." The doctor testified that the contusions were not visible, but nevertheless he strapped Cerullo's chest, gave him medication to ease the pain and sent him to Meadowbrook Hospital for chest x-rays with a diagnosis of "possible fractured ribs." Although the x-rays proved negative, when Cerullo returned to Dr. Vivona on October 15 for another examination, the doctor told him to keep his chest strapped "for a couple more days." The doctor also testified that Cerullo's condition on October 5th could have been produced by someone smashing their fist against his rib cage, but he was unable to say when and how the injuries had occurred.

The Attorney General maintains that there is no objective evidence of physical injury but merely subjective complaints. Justice Farley so found at the Huntley hearing. The New York Court of Ap-

peals distinguished the cases cited in Judge Burke's dissent because they "contained proof of objectively verifiable injuries, not equivocal evidence of subjective complaints of pain by the defendants." 18 N.Y.2d at 841, 275 N.Y.S.2d at 847. Judge Tenney also denied the writ because "The complaints made by relator, according to the examining physician, were all subjective and did not necessarily arise at the time of interrogation. No proof was offered of objectively verifiable injuries; only equivocal evidence of subjective complaints of pain were shown." Judge Tyler did not reach this question because of the limited nature of the hearing conducted on the remand.

We find Dr. Vivona's testimony incompatible with a finding that Cerullo's complaints were merely subjective. The state trial record shows that Cerullo's co-defendant, Moccio, was examined on the same day as Cerullo and that Dr. Vivona found a "contusion of the lower abdomen." The doctor testified with regard to Moccio that "by feeling his abdomen and pushing on it" he was able to determine with reasonable degree of medical certainty that Moccio had been a victim of a trauma, even though "there was no discoloration, no marks or anything at all." The record does not indicate whether or not Dr. Vivona used palpation to determine the extent of Cerullo's injuries, as he did in Moccio's case, and, as Dr. Vivona has since died, we can never know. However, it would be pertinent to adduce testimony at a hearing concerning whether it was customary for a doctor to use palpation to determine if contusions exist and whether it was customary for the prison doctor to send a prisoner to a hospital for x-rays without objective support for the prisoner's complaints.

■ The state courts and district court, having erroneously found that the only evidence of injury to Cerullo was his own self-serving statement that he was in pain, did not properly evaluate Cerullo's claim that he was beaten by the police. As Judge Burke noted in his dissent, under New York law once Cerullo's physical injuries were established they must be satisfactorily explained by the State in order for the confession to be admissible at the trial. People v. Valletutti, 297 N.Y. 226, 78 N.E.2d 485 (1948); People v. Barbato, 254 N.Y. 170, 172 N.E. 458 (1930). The only evidence in the record in contradiction to Cerullo's testimony that he received his injuries during his interrogation is Dr. Vivona's testimony that Cerullo told him he had fallen down in the police station. Cerullo denied at the trial that he made this statement to the doctor. It was perhaps significant that Dr. Vivona also testified that co-defendant Moccio told him his injury was due to a fall. The State has produced no evidence to substantiate the occurrence of either of these falls. We find the state's unsupported explanation of both defendants' injuries unsatisfactory to say the least.

Under these circumstances, we cannot rest upon the determinations of the state courts or of the district court that Cerullo's confession was voluntary. See Stein v. People of State of New York, 346 U.S. 156, 183, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). We find that the determination of the state court is not fairly supported by the record and that the record is inadequate for reliable determination of whether or not Cerullo's statements were voluntary. Therefore, in accordance with 28 U.S.C. § 2254(d), Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), we remand to the district court for a full, fair and adequate evidentiary hearing.

On remand, the State may introduce additional evidence to show that Cerullo's confession was voluntary beyond a reasonable doubt, as required by Jackson v. Denno, supra, United States ex rel. Laino v. Warden, 246 F.Supp. 72, 92 n. 15 (SD NY1965), aff'd, 355 F.2d 208 (2d Cir. 1966). Cerullo may introduce additional evidence that his statements were not voluntary in accordance with Townsend v. Sain, supra, and Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772,

16 L.Ed.2d 882 (1966). Even though the previous hearings have produced what the parties regard as a sufficient record, both sides should call all their witnesses to the stand,[2] so that the trial judge at the hearing will have an opportunity to observe their demeanor as an aid in resolving the factual dispute that is raised by the conflicting testimony. Townsend v. Sain, 372 U.S. at 322, 83 S.Ct. 745.

The case is remanded for further proceedings consistent with this opinion.

---

2. While we express no opinion as to the weight to be accorded to their testimony, review of the record leads us to believe that testimony of co-defendant Moccio, who also claimed he was beaten, of Senator Mossberg, who appeared on behalf of appellant October 10, 1962 and charged police brutality, and of the physician who examined Cerullo at Meadowbrook Hospital would be relevant to determination of the claim of physical coercion. Testimony of Cerullo's wife and brother concerning their attempts to contact him would be relevant to determination of Cerullo's claim that the police held him incommunicado.